NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| | : | |
| | : | |
| IN RE AUDIBLE, INC. | : | Civil Action No. 05-1027 (JAG) |
| SECURITIES LITIGATION | : | |
| | : | **OPINION** |
| | : | |
| _____ | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on Plaintiffs'[1] Motion for Reconsideration of

Dismissal of Consolidated Amended Class Action Complaint  (Docket Entry No. 31) ("Motion

for Reconsideration").  In this motion, Plaintiffs seek reconsideration of this Court's order dated

March 30, 2007 and opinion dated April 3, 2007.  This Court held that Plaintiffs' complaint

failed to allege specific facts showing scienter, and thus failed to establish a violation of Section

10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 against Audible,

Inc. ("Audible"), Donald Katz ("Katz"), and Andrew P. Kaplan ("Kaplan") (collectively,

"Defendants").  As a result, this Court dismissed those counts of the complaint that alleged

Exchange Act and Rule 10b-5 claims, pursuant to FED R. CIV. P. 12(b)(6).  Since Plaintiffs had

failed to establish a predicate violation of Section 10(b), this Court also dismissed the control

person claims in Plaintiffs' complaint, pursuant to FED R. CIV. P. 12(b)(6).

Plaintiffs argue that this Court: (1) overlooked facts that demonstrate motive and

_____

[1] Lead plaintiffs are Kirk Chung, H. Keith Morgan, Jungwhan Oh, and Frederick Pierson
("Plaintiffs").

opportunity;[2] (2) misapplied Third Circuit precedent;[3] and( 3) overlooked circumstantial

evidence of scienter.[4]  For the reasons set forth below, Plaintiff's Motion for Reconsideration

───────────────────

[2]  In the Motion for Reconsideration, Plaintiffs argue that this Court did not consider the following evidence that Defendants had motive and opportunity to mislead investors:

- Defendants Katz and Kaplan together sold over $6.5 million of stock, just over two weeks after they had, on November 2, 2004, heartily touted the Company's accelerating growth and rosy prospects for the future (indeed, in response to Defendants' predictions, Audible's stock price rose from $19.65 on November 2 to close at $25.79 on November 18).  *See* Exhibit A to the Response Brief (public record of Audible's closing stock prices over the pertinent period);
- The proceeds from Defendants' stock sales represent well over *fifteen* times their respective salaries of $190,000 for 2004.  *See* excerpt from Audible's 2005 Schedule 14A (filed with the SEC), Exhibit B to the Response Brief;
- Sales of this magnitude were unprecedented in either Defendant's trading history – their SEC filings demonstrate that the largest sales they had made prior to the secondary offering were $135,000 (Katz) and $99,600 (Kaplan).  *see* Defendants' public trading record and SEC Form 4's, Exhibit C to the Response Brief;  and
- Taking into account the Defendants' exercisable options, these sales represented 18% of Katz's holdings and 31% of Kaplan's.

(Lead Pls.' Mem. in Supp. of Mot. for Reconsideration of Dismissal of Consol. Am. Class Action Compl. 5 (hereinafter Lead Pls.' Br.").)

[3]  Specifically, Plaintiffs argue that this Court did not consider the Third Circuit's decision in  In re Suprema, 438 F.3d 256 (3d Cir. 2006), which is controlling authority.  (Lead Pls.' Br. 5-6.)

[4]  Plaintiffs argue that this Court failed to consider Katz's statement on February 15, 2005 that the "fourth quarter was definitely an eye opener for us . . . it just hits *certain bars that we set for ourselves* in terms of knowing it was that it was time to step out."  (Lead Pls.' Br. 7 (quoting Am. Comp. ¶ 46) (emphasis in original).)

Additionally, Plaintiffs note that, in the same earnings call, Katz commented that

Now let's talk about growth and how we plan to build on solid results and a strong foundation in the future.  A large majority of Audible investors, Andy [Kaplan] and I talked to you, particularly in recent months, tend to ask us when we will step on the gas.  We tend to reply by talking about our direct marketing focus and data driven discipline, when we hire people or invest in new initiatives we fully expect these investments to come back as exceptional gains.  We tend to mention the early stage character of our market we expect to grow very fast going

will be denied.

**Legal Standard**

A motion to reconsider, pursuant to FED. R. CIV. P. 59(e) and L. CIV. R. 7.1(i), is "an extremely limited procedural vehicle," and requests pursuant to these rules are to be granted "sparingly." P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 1992) (citing Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986)). The Third Circuit has held that the purpose of a motion to reconsider is to "correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986).

A court may grant a motion to reconsider only if the moving party shows either: (1) an intervening change in the controlling law; (2) the existence of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). To satisfy its burden, the moving party must show "dispositive factual matters or controlling decisions of law" that were brought to the court's attention but not considered. P. Schoenfeld Asset Mgmt. LLC, 161 F. Supp. 2d at 353; see also Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987). "The motion may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached." P. Schoenfeld Asset Mgmt., L.L.C., 161 F. Supp. 2d at 352. "A party seeking

---

forward. *And we always add that the opportunities for acceleration are clearly coming, and we will seize them aggressively as soon as they appear.*

(Lead Pls.' Br. 7 (quoting transcript of Fourth Quarter 2004 Earnings Call, Feb. 15, 2005, attached as Exhibit G to the Mem. in Supp. of Defs.' Mot. to Dismiss (hereinafter "Ex.G")).)

reconsideration must show more than a disagreement with the Court's decision, and

'recapitulation of the cases and argument considered by the court before rendering its original

decision fails to carry the moving party's burden.'" Id. (quoting G-69 v. Degnan, 748 F. Supp.

274, 275 (D.N.J. 1990) (internal citations omitted)).

The "proper ground for granting a motion to reconsider, therefore, is that the matters or

decisions overlooked, if considered by the court, 'might reasonably have altered the result

reached.'" G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting New York Guardian

Mortgage Corp. v. Cleland, 473 F. Supp. 409, 420 (S.D.N.Y. 1979)).

**Analysis**

Plaintiffs assert neither an applicable intervening change in controlling law[5] nor the

---

[5] A change in, or at least a clarification of, controlling law in fact has occurred since this Court issued its opinion. In June 2007, the Supreme Court of the United States issued an opinion in Tellabs, Inc. v. Makor Issues & Rights, Ltd., addressing the question of how to define "strong inference" of scienter under the Private Securities Litigation Reform Act ("PSLRA"). The Court concluded that "[i]t does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by [15 U.S.C. § 78u-4(b)(2)] must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as 'strong' within the intendment of [15 U.S.C. § 78u-4(b)(2)], we hold, an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2504-05 (2007). In making this determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss. . . . The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 2509 (emphasis in original).

Applying this standard, Plaintiffs' allegation of scienter would fail since the inferences Plaintiffs ask this Court to draw are not "at least as compelling as" the nonfraudulent inferences that could be drawn from the same facts. For example, it is just as reasonable, if not more so, to infer that Katz and Kaplan sold stock options when the company was doing well in order to reap

4

existence of new evidence.  Rather, Plaintiffs argue that this Court overlooked facts and legal

precedent that might have reasonably altered the result previously reached.  However, these

matters were all raised in the briefs and considered by this Court in reaching its original

conclusion.  As explained more fully below, it appears that Plaintiffs are simply attempting to re-

litigate the original motion.  As a result, Plaintiffs fail to satisfy the requirements for granting a

motion for reconsideration.

**Overlooked Legal Precedent**

In their respective briefs either supporting or opposing the motion to dismiss, both

Defendants and Plaintiffs cited to In re Suprema.  Additionally, this Court analyzed Suprema in

its opinion.  Plaintiffs' argument that this Court misapplied the Third Circuit's precedent in

Suprema appears to be an effort to re-litigate the interpretation and application of this legal

precedent.  As such, it is not a basis for granting a motion for reconsideration.  Therefore,

Plaintiffs' motion will be denied on this ground.

Even considering Plaintiffs' effort to reargue the holding in Suprema, this Court remains

unpersuaded.  In Suprema, the Third Circuit applied pre-existing precedent[6] regarding motive

and opportunity to the facts presented in that case.  Considering the number of shares sold and

the substantial profits reaped in relation to the defendants' compensation, along with the

---

the rewards of their hard work, rather then inferring they sold their stock options as part of a
scheme to defraud investors.  Since Plaintiffs have not raised the question of how Tellabs
impacts this Court's decision, this analysis is to some measure academic but it does show that
given this Court's view regarding scienter, even under Tellabs Plaintiffs fail.

[6] The Third Circuit applied the standards established by In re Advanta Corp. Sec. Litig.,
180 F.3d 525 (3d Cir. 1999), In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir.
1997), and Wilson v. Bernstock, 195 F.Supp. 2d 619 ( D.N.J. 2002) in analyzing the question of
motive and opportunity in Suprema.

suspicious timing of the sales – defendants sold their shares while the "stock was artificially inflated as a result of the round-trip sales scheme, just six weeks before [defendants] resigned," the Third Circuit concluded that plaintiffs had pled scienter by demonstrating motive and opportunity.  Suprema, 438 F.3d at 277.

Here, Katz and Kaplan sold stock approximately three months before the announcement of the company's expansion into the United Kingdom, and other new capital intensive spending plans and initiatives which would require substantial investments in infrastructure, new business units, and marketing.  (Consol. Am. Class Action Compl. (hereinafter "Am. Compl.") ¶ 44.) Additionally, at least some of Katz's and Kaplan's stock sales were made pursuant to 10(b)5-1 plans that were filed with the SEC in August 2004, approximately six months before the February 15, 2005 announcement.  Unlike the defendants in Suprema who had actively participated in a complex series of fraudulent round-trip sales, Katz and Kaplan simply announced plans to expand Audible's business and enhance the company's infrastructure. Further, Katz's and Kaplan's stock sales occurred well before the announcement of the expansion plans was made, rather than in close proximity to the announcement.  Unlike the Suprema defendants, Katz and Kaplan did not resign from Audible following their stock sales.

Based on the Third Circuit's decision in Suprema, this Court cannot conclude that Plaintiffs have pled scienter based on motive and opportunity.

**Motive and Opportunity**

Additionally, Plaintiffs argue that this Court erred in its motive and opportunity analysis by overlooking several facts.[7]  However, all of the facts noted by Plaintiffs were previously

---

[7] The allegedly overlooked facts set forth in footnote 2, supra, all relate to Katz's and Kaplan's stock sales.

before this Court.  Indeed, the facts cited in Plaintiffs' current brief are a verbatim quote from

Plaintiffs' brief in opposition to the motion to dismiss.  (<u>Compare</u> Lead Pls.' Mem. of Law in

Opp'n to Defs.' Mot. to Dismiss Consol. Am. Class Action Comp. 17-18 <u>to</u> Lead Pls.' Br. 5.)

Therefore, it appears that Plaintiffs are simply attempting to reargue issues that they already have

presented to this Court.  As noted previously, motions for reconsideration "may not be used to

re-litigate old matters."  <u>P. Schoenfeld Asset Mgmt., L.L.C.</u>, 161 F. Supp. 2d at 352.  Simply

repeating facts already before this Court is insufficient to satisfy Plaintiffs' burden.

As discussed above, the allegedly overlooked facts still do not persuade this Court that

Katz and Kaplan had the motive and opportunity necessary to demonstrate scienter.  That is,

even if this Court had not considered these facts originally, consideration of these allegedly

overlooked facts now would not "reasonably have altered the result reached."  <u>G-69 v. Degnan</u>,

748 F. Supp. 274, 275.

Plaintiffs' motion seeking relief on this basis shall also be denied.

**Circumstantial Evidence of Scienter**

As to Plaintiffs' argument regarding circumstantial evidence of scienter, Plaintiffs submit

that this Court failed to consider Katz's statement on February 15, 2005 as demonstrating Katz's

knowledge that the capital expenditures had been contemplated well in advance of their

announcement on February 15, 2005.[8]  (Lead Pls.' Br. 6-7.)  These statements were before the

Court previously and were considered and discussed in the opinion.  <u>See</u>, <u>e.g.</u>, <u>In re Audible Inc.</u>

---

[8] As previously noted, <u>see</u> footnote 4, <u>supra</u>, Plaintiffs cite two excerpts from Katz's
statement during the Fourth Quarter 2004 earnings call held on February 15, 2005 in support of
this claim.

Securities Litig., No. 05-cv-1027, slip op. at 15-17 (D.N.J. April 3, 2007).[9]  As previously noted,

Plaintiffs are simply attempting to re-litigate an issue that was argued and decided.

Even if Katz's statements had not been before this Court previously, consideration of

them now does not result in a different conclusion.  That is, this Court cannot say that these

statements indicate that Katz knew in November 2004 that he would be announcing growth

initiatives in February 2005.  In fact, given that his statements are based upon the 2004 fourth

quarter results, which could not have been available before December 31, 2004, at the very

earliest, it is impossible for this Court to envision how his statements could be interpreted as

supporting a showing of scienter.

Further, Katz's second comment was made in response to the question of "how long has

this, kind of, plan B [ph] being [sic] in the work [sic]?  Was this the plan all along or did you see

the fourth quarter acceleration in iPod and decide now it's time to hit the accelerator?"  (Ex. G at

12.)  Taken in context, when Katz responded that the fourth quarter was an eye opener, this

Court can only infer that the management at Audible was pleasantly surprised by the fourth

quarter results and decided to expand upon that success, rather than the inference Plaintiffs

suggest, namely, that Katz and Kaplan had known for months that they would be announcing the

expansion plans in February 2005.

Therefore, the motion will be denied on this basis.

**Conclusion**

Although Plaintiffs argue that this Court overlooked facts and legal precedent, Plaintiffs'

---

[9]  This Court was aware of these statements and specifically discussed them in connection with the materiality analysis in the April 3, 2007 opinion.  Since this Court could not envision any circumstances under which these statements could support an inference of scienter, they were not included in the discussion of scienter.

Motion for Reconsideration simply repeats arguments that Plaintiffs originally made before this

Court.  Reconsideration of a judgment after it is entered is an extraordinary remedy and rarely

granted.  The challenging party must assert an intervening change in controlling law, the

existence of new evidence, or the need to correct a clear error of law.  The information presented

to this Court does not meet these standards. This Court will deny Plaintiffs' Motion for

Reconsideration.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: December 18, 2007